# EXHIBIT 1

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/20/2025 5:12 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

1   Joseph Jeziorkowski (State Bar No. 343585)
    jjj@valiantlaw.com
2   Raymond Babaian (State Bar No. 232486)
    rb@valiantlaw.com
3   Robert Safar (State Bar No. 360150)
    res@valiantlaw.com
4   **VALIANT LAW**
    800 Ferrari Lane, Suite 100
5   Ontario, California 91764
    Phone: 909 677 2270 ♦ Fax: 909 677 2290
6
7   Attorneys for Plaintiff, JANE DOE

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF LOS ANGELES**

10

11  JANE DOE, an individual                    Case No.   25STCV24581

12              Plaintiff.                      **PLAINTIFF'S COMPLAINT FOR:**

13      v.
                                                1.  Gender Discrimination in Violation of
14  FOX CORPORATION, a Delaware                     FEHA;
    Corporation; FOX CABLE NETWORK             2.  Sexual Orientation Discrimination in
15  SERVICES, LLC, a Delaware Company;             Violation of FEHA;
    VALSH EXECUTIVE PROTECTION, LLC,          3.  Race discrimination in Violation of
16  a California company; CONSTELLIS, LLC, a       FEHA;
    Virginia company; TRIPLE CANOPY, INC.,    4.  Harassment - Hostile Work
17  an Illinois corporation; VEANTEA              Environment in Violation of FEHA;
    BURNSIDE, an individual; CHRISTOPHER      5.  Retaliation in Violation of FEHA;
18  GANNY, an individual; GREGORY             6.  Whistleblower Retaliation in Violation
    OCHOTORENA, an individual; DIIJON             of Labor Code § 1102.5;
19  WILLIAMS, an individual; ANNA DRUKER,     7.  Failure to Prevent Discrimination,
    an individual; and DOES 1-100, inclusive      Harassment, and Retaliation in
20                                                 Violation of FEHA;
                Defendants.                    8.  Wrongful Termination in Violation of
21                                                 Public Policy;
                                               9.  Negligent Supervision, Retention, and
22                                                 Hiring;
                                               10. Unlawful, Unfair, and Fraudulent
23                                                 Business Practices in Violation of Bus.
                                                   & Prof. Code §§ 17200, et seq;
24                                             11. Sex Trafficking under 18 U.S.C. §
                                                   1591, et seq.;
25                                             12. Negligent Infliction of Emotional
                                                   Distress; and
26                                             13. Intentional Infliction of Emotional
                                                   Distress.
27

28

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1

2

3

4

5

6

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

**DEMAND FOR JURY TRIAL**

**COME NOW** PLAINTIFF, JANE DOE, an individual, and allege as follows:

## JURISDICTION AND VENUE

1.       This is an unlimited civil case, and the Court has jurisdiction over this action because the amount of controversy exceeds $35,000.00, exclusive of interest and costs.

2.       Jurisdiction and Venue are also proper in this Court because all the claims alleged herein arose in Los Angeles County, California and, at the times relevant herein, each Defendant does or did business in Los Angeles County, California, and/or their principal place of business is in Seal Beach, California. *See also* California Code of Civil Procedure § 395, which provides that the venue is proper in this County because defendants reside in this County and the harm to Plaintiff occurred in this County.

## PARTIES

3.       JANE DOE (hereinafter, "PLAINTIFF"), at all times relevant hereto, was an employee within Los Angeles County and was employed by entities within Los Angeles County during the applicable limitations period.

4.       PLAINTIFF is informed and believes, and thereon alleges, that Defendant FOX CORPORATION (hereinafter "FOX CORP"), is a Delaware corporation doing substantial business in the State of California, with its relevant place of business located at 10301 W Pico Blvd, Los Angeles, CA 90064.

5.       PLAINTIFF is informed and believes, and thereon alleges, that Defendant FOX CABLE NETWORK SERVICES, LLC (hereinafter, "FOX CNS"), is a Delaware company and a subsidiary of FOX CORP doing substantial business in the State of California, with its relevant place of business located at 10301 W Pico Blvd, Los Angeles, CA 90064.

6.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant VALSH EXECUTIVE PROTECTION, LLC (hereinafter, "VALSH"), is a California company, wholly owned by Defendant VEANTEA BURNSIDE, doing substantial business in the State of California, with its relevant place of business located at 555 Anton Boulevard, Suite 150, Costa Mesa, CA 92626.

7.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant CONSTELLIS, LLC (hereinafter, "CONSTELLIS"), is a Delaware company doing substantial business throughout the state of California.

8.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant TRIPLE CANOPY, INC.  (hereinafter, "TRIPLE CANOPY") is an Illinois company and a wholly owned subsidiary of CONSTELLIS doing substantial business throughout the state of California.

9.     PLAINTIFF ins informed and believes, and thereon alleges, that Defendant VEANTEA BURNSIDE (hereinafter, "BURNSIDE") is an individual residing in the State of California. BURNSIDE was the director of special events and security of FOX CORP, as well as the Chief Executive Officer and sole owner of VALSH, and in the capacity during all times alleged herein, acted directly under the direction of and was a managing agent of FOX CORP, FOX CNS, and VALSH.

10.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant CHRISTOPHER GANNY (hereinafter, "GANNY") is an individual residing in the State of California. GANNY is the Vice President of Global Security Operations of FOX CORP, and in the capacity during all times alleged herein, acted directly under the direction of and was a managing agent of FOX CORP.

11.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant GREGORY OCHOTORENA (hereinafter, "OCHOTORENA") is an individual residing in the State of California. OCHOTORENA is the Senior Vice President of Global Security of FOX CORP, and in the capacity during all times alleged herein, acted directly under the direction of and was a managing agent of FOX CORP.

12.     PLAINTIFF is informed and believes, and thereon alleges, that Defendant DIIJON

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1   WILLIAMS (hereinafter, "WILLIAMS") is an individual residing in the State of California.

2   WILLIAMS is the Vice President of Human Resources of FOX CORP, and in the capacity during

3   all times alleged herein, acted directly under the direction of and was a managing agent of FOX

4   CORP.

5       13.    PLAINTIFF is informed and believes, and thereon alleges, that Defendant ANNA

6   DRUKER (hereinafter, "DRUKER") is an individual residing in the State of California. DRUKER

7   is the Vice President of Employee Relations of FOX CORP, and in the capacity during all times

8   alleged herein, acted directly under the direction of and was a managing agent of FOX CORP.

9       14.    PLAINTIFF is  informed and believes, and thereon allege, that DOES 1 through

10  100 (hereinafter, "DOES"), inclusive, are, or were, individuals and are, or were, doing business at

11  all times herein mentioned and material hereto in the State of California, and are, or were, the alter

12  ego, or  the duly authorized agent, or the managing agent, or the principal, or the owner, or the

13  partner, or joint venture, or representative, or manager, or co-conspirator of each of the other

14  defendants, and were at all times mentioned herein acting within the course and scope of said agency

15  and employment, and that all acts or omissions alleged herein were duly committed with the

16  ratification, knowledge, permission, encouragement, authorization and consent of each defendant

17  designated herein.

18      15.    The true names and capacities, whether individual, corporate or associate, or

19  otherwise, designated herein as DOES, are unknown to PLAINTIFF at this time, who, therefore,

20  sue said DOES by such fictitious names and will ask leave of Court to amend this Complaint to

21  show their true names and capacities when ascertained.

22      16.    PLAINTIFF is informed and believes and based thereon allege that at all times

23  material hereto, FOX CORP and FOX CNS (hereinafter, collectively referred to as "FOX"),

24  VALSH, CONSTELLIS and TRIPLE CANOPY (hereinafter, collectively referred to as

25  "CONSTELLIS/TRIPLE CANOPY"), BURNSIDE, GANNY, OCHOTORENA, WILLIAMS,

26  DRUKER, and DOES 1 through 100, (hereinafter collectively referred to as "DEFENDANTS"),

27  and each of them, were duly authorized agents, or servants, or representatives, or co-conspirators of

28  the other, or the alter ego, or the principal, or the owner, or representatives, and were acting at all

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1  times within the course and scope of their agency or representative capacity with the knowledge and

2  consent of the other.

3       17.    All the acts and conduct herein and below described of each and every corporate

4  Defendant was duly authorized and ordered by management-level employees of said corporate

5  employer. In addition, thereto, said corporate employer participated in the aforementioned acts and

6  conduct of their said employees, agents and representatives, and each of them; and upon completion

7  of the aforesaid acts and conduct of said corporate employees, agents and representatives, the

8  corporate Defendants, respectively and collectively, ratified, accepted the benefits of, condoned,

9  lauded, acquiesced, authorized and otherwise approved of each and all of the said acts and conduct

10  of the aforementioned corporate employees, agents and representatives.

11  <u>**EXHAUSTION OF ADMINISTRATIVE PROCEEDINGS**</u>

12       18.    PLAINTIFF exhausted her administrative remedies by timely filing a complaint for

13  the issues required to be raised herein against DEFENDANTS with the California Civil Rights

14  Department (hereinafter "CRD") and thereafter received a "Right to Sue" letter from the CRD

15  attached hereto as **Exhibit "A"**.

16  <u>**FACTUAL ALLEGATIONS**</u>

17       19.    PLAINTIFF began her employment with CONSTELLIS/TRIPLE CANOPY,

18  VALSH, and FOX in or around 2020. PLAINTTIFF is an employee of CONSTELLIS/TRIPLE

19  CANOPY contracted by FOX. For a brief period of time, PLAINTIFF was paid through VALSH,

20  as a result of BURNSIDE's authority and supervision over PLAINTIFF. Of note, BURNSIDE was

21  the Director of Special Events and Security of FOX as well as the Chief Executive Officer and sole

22  owner of VALSH.

23       20.    Although PLAINTIFF was hired through CONSTELLIS/TRIPLE CANOPY,

24  PLAINTIFF is informed and believes, and thereon alleges, that FOX: (1) set PLAINTIFF's wages,

25  hours, or working conditions; (2) hired or terminated employees similar to PLAINTIFF; (3)

26  controlled PLAINTIFF's work; (4) set or negotiated PLAINTIFF's wages; (5) assigned or

27  supervised PLAINTIFF's work; (6) determined PLAINTIFF's hours or conditions of employment;

28  (7) set PLAINTIFF's work schedules; and/or (8) supplied the instrumentalities, tools, or place of

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

work for PLAINTIFF.

21.    Notwithstanding, PLAINTIFF was issued paychecks from CONSTELLIS/TRIPLE CANOPY and, for a brief period from VALSH, FOX and its managing agents had supervision over PLAINTIFF as it pertained to the terms and conditions of PLAINTIFF's employment. PLAINTIFF's functional and work supervisors worked for FOX and had the ability to tell PLAINTIFF where to work and which tasks to work on and controlled PLAINTIFF's schedule and work duties and functions. PLAINTIFF's employment and work was intended to be and was indeed for the benefit of FOX. FOX was by all objective and reasonable standards PLAINTIFF's de facto employer at all relevant times. At all relevant times, PLAINTIFF was never directed by or performed work for any other entities other than FOX, VALSH, and CONSTELLIS/TRIPLE CANOPY and had never been contracted to provide services for any entities other than FOX and VALSH. As a result, the allegations made by PLAINTIFF in this action are made against FOX, VALSH, and CONSTELLIS/TRIPLE CANOPY, as they all served as joint employers of PLAINTIFF during the relevant time period.

22.    Importantly, PLAINTIFF's services were not localized in any state. Due to the nature of PLAINTIFF and her department's work, PLAINTIFF travelled and performed services across the world. As a part of her job duties and at the direction of FOX, PLAINTIFF has travelled to and performed services in multiple states within the United States and globally, including but not limited to California, Alabama, Delaware, Georgia, Tennessee, and Australia. Defendants BURNSIDE, OCHOTORENA, and GANNY—PLAINTIFF's immediate supervisors and managers—as well as FOX's managing agents DRUKER and WILLIAMS are based at and operated out of FOX's California office, located at 10301 W Pico Blvd, Los Angeles, CA 90064, which served as the corporate headquarters for FOX's security department and the Human Resources Department. As such, PLAINTIFF's services were controlled from California, and the tortious conduct taken against PLAINTIFF was decided and acted upon in California.

23.    In or around May 2021, PLAINTIFF assumed the role of a Security Coordinator and joined FOX's security department, wherein she began working closely with multiple FOX executives.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

24.     Since the onset of PLAINTIFF's involvement with the executive team of FOX's security department, however, PLAINTIFF quickly discovered that the work environment was unprofessional and toxic—characterized by vulgar language, sexually and racially inappropriate "humor," and coercive substance and alcohol abuse. Much of the discriminatory and abusive behavior stemmed directly from GANNY and BURNSIDE who routinely engaged in and encouraged such conduct.

25.     PLAINTIFF is a Black woman who identifies as a member of the LGBTQ+ community, a fact later disclosed to FOX against PLAINTIFF's will. GANNY, Vice President of Global Security Operations and PLAINTIFF's manager, regularly made racially charged comments such as referring to himself as the team's "slave-driver" and how he was "cracking the whip." PLAINTIFF was repeatedly told, "don't get too comfortable, black girls don't last around here." Additionally, GANNY, on multiple occasions, inappropriately commented on female employees' bodies. Each and every time PLAINTIFF witnessed this she objected to such comments and made it clear that she felt offended and disgusted. On one specific occasion while at a restaurant, a FOX executive and multiple employees were mocking the names of Black waiters and referred to a Black waiter as "high cotton." In another instance, another member of the security department sat back-to-back against PLAINTIFF and pulled her braids over his own head without her consent—while other employees laughed and took photos.

26.     On or about May 14, 2021, PLAINTIFF, directed by BURNSIDE and FOX, travelled to Delaware for the Monster Mile Nascar Event. This was PLAINTIFF's first time working with BURNSIDE and the beginning of her increased role within FOX's security department. Over the next few days, PLAINTIFF shadowed BURNSIDE, her immediate supervisor and primary contact within FOX thus far. Since the onset of her tenure working under BURNSIDE, however, BURNSIDE coerced PLAINTIFF to act as his personal assistant and chauffeur, directing PLAINTIFF to drive him around and complete his personal errands.  These tasks were wholly irrelevant to and beyond the scope of PLAINTIFF's job duties. PLAINTIFF is informed and believes, and thereon alleges, that no other employees were directed to act as BURNSIDE's personal assistant and that BURNSIDE engaged in such conduct to strip PLAINTIFF of her sense of

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

autonomy and exert authority beyond their employment relationship. BURNSIDE positioned himself as PLAINTIFF's authority figure at FOX—whose favor was necessary for PLAINTIFF's continued employment.

27.     On or about May 15, 2021, after a day of training, BURNSIDE invited PLAINTIFF to dinner. At dinner, BURNSIDE insisted on PLAINTIFF consuming alcoholic beverages. After repeated demands by BURNSIDE, PLAINTIFF conceded and had one alcoholic beverage. BURNSIDE himself had multiple alcoholic beverages and again insisted PLAINTIFF consume more alcohol, which PLAINTIFF refused.

28.     After dinner, PLAINTIFF attempted to return to her hotel. However, BURNSIDE directed PLAINTIFF to drive him to a nearby liquor store where he purchased more alcohol and then directed PLAINTIFF to drive him back to his hotel. Back at BURNSIDE's hotel, BURNSIDE pressured PLAINTIFF into consuming more alcohol.

29.     Around 12:45 a.m., now May 16, 2021, PLAINTIFF again attempted to leave. BURNSIDE pressured her to "stay a little bit longer." BURNSIDE dismissed PLAINTIFF's concerns about work and jokingly remarked that, as her boss, he would ensure she would not be reprimanded—deliberately reminding PLAINTIFF of his authority over her.

30.     PLAINTIFF conceded and agreed to stay for just a few minutes longer. Within those few minutes, before PLAINTIFF could leave, BURNSIDE lunged towards PLAINTIFF and began unbuttoning her pants. PLAINTIFF attempted to remove his hand and shouted, "No!"

31.     Upon PLAINTIFF's resistance, BURNSIDE grabbed PLAINTIFF and forced himself onto her. BURNSIDE, who is approximately three times PLAINTIFF's weight and nearly a foot taller, crushed PLAINTIFF with his weight. PLAINTIFF thrashed, kicked, and pleaded for BURNSIDE to stop. Instead, BURNSIDE pinned PLAINTIFF down. In her state of shock and terror, PLAINTIFF froze. BURNSIDE forcibly pulled down PLAINTIFF's pants and digitally and orally penetrated her vagina.

32.     After BURNSIDE withdrew, PLAINTIFF pulled up her pants, grabbed her belongings, and rushed out of BURNSIDE's hotel.

33.     While driving back to her hotel, still in a state of shock and terror, PLAINTIFF was

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

involved in a severe automobile accident. PLAINTIFF's vehicle spun out of control and overturned, completing a full rotation. The accident caused significant damage to the vehicle, including a crushed roof and a mangled front end.

34.    In the immediate aftermath of the accident, PLAINTIFF, concussed and dazed, forced the deformed vehicle door open and exited, where she was able to retrieve her phone which was ejected from the vehicle and was now on the side of the road.

35.    PLAINTIFF was severely injured, incapacitated, and, with no other available contacts, transportation, or assistance in Delaware, was forced to contact her assailant, BURNSIDE, who seized the opportunity to exploit PLAINTIFF's vulnerable position.

36.    After BURNSIDE arrived, BURNSIDE claimed to PLAINTIFF that he was a former police officer, so he would speak to the police to "fix this." After BURNSIDE spoke with the police, the officer wrote "no injuries" in the field report and did not call for medical attention.

37.    Once the police left, BURNSIDE coerced PLAINTIFF to return to his hotel once again, even though PLAINTIFF obviously and desperately required medical attention. PLAINTIFF's injuries were visibly apparent, with swollen eyes and lips as well as blood streaming down her face. PLAINTIFF also told BURNSIDE she was in immense pain and believed she suffered a concussion and broken ribs. BURNSIDE dismissed PLAINITFF's injuries and refused to take PLAINTIFF to the hospital. Instead, BURNSIDE drove PLAINTIFF back to his hotel, the scene of PLAINTIFF's assault and battery.

38.    PLAINTIFF is informed and believes, and thereon alleges, that BURNSIDE had never been a police officer but presented himself as such so he could talk to the officers on PLAINTIFF's behalf, fearing that PLAINTIFF would report the sexual battery and violence. PLAINTIFF is further informed and believes, and thereon alleges, that BURNSIDE adamantly prevented PLAINTIFF from going to the hospital, so PLAINTIFF could not report or collect evidence of the sexual battery he subjected her to.

39.    Instead, PLAINTIFF was forced to return to BURNSIDE's hotel, where she remained without medical attention despite PLAINTIFF's severe injuries from the sexual battery and car accident.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

40.     The following day, BURNSIDE instructed PLAINTIFF to act as though nothing had happened and to conceal her injuries, threatening PLAINTIFF's employment if she disclosed this information. Worse yet, despite being on notice of PLAINTIFF's severe injuries and recent accident, BURNSIDE continued to force PLAINTIFF to drive him around. Worse, following the event, BURNSIDE stated that PLAINTIFF's work for the past few days was merely a "test run" and refused to pay her any of her rightfully earned wages for her time.

41.     Unbeknownst to PLAINTIFF at the time, on or about July 7, 2021—just weeks after the sexual violence committed against her. Specifically, BURNSIDE sent a male employee a photograph of a half-naked woman and offered to arrange for the woman to be delivered to the employee's hotel room. This conduct exemplified the culture fostered at FOX, where management openly engaged in sexist and objectifying behavior and enabled a workplace environment characterized by a "locker room" attitude. PLAINTIFF is informed and believes, and thereon alleges, that BURNSIDE had a history of sexually violent behavior, and that she was not his only victim.

42.     As a result of FOX's inaction to the clearly sexist working environment, BURNSIDE continued to sexually harass PLAINTIFF, making comments about her makeup and clothing. Through various conducts, BURNSIDE also attempted to undermine PLAINTIFF's position and status at FOX to deepen the power imbalance between them and exert further control over PLAINTIFF, pressuring her to remain silent.

43.     BURNSIDE spread rumors falsely disparaging PLAINTIFF's performance, in an attempt to isolate PLAINTIFF. BURNSIDE regularly threatened to reduce PLAINTIFF's hours, eliminate her position at FOX, or withhold her wages. BURNSIDE constantly reminded PLAINTIFF that she was indebted to him because he hired PLAINTIFF. BURNSIDE also continued to assign PLAINTIFF work acting as his personal assistant.

44.     Despite BURNSIDE's efforts, PLAINTIFF, an excellent and dedicated employee, earned herself a promotion to Security Operations Manager for FOX's United States Football League (hereinafter, "USFL") events in or around April 2022.

45.     Around this time, while PLAINTIFF was completing the payroll for VALSH—

which again was not part of her job duties but was compelled to do so by BURNSIDE—PLAINTIFF discovered that she was significantly underpaid compared to her male coworkers. Unlike others paid through VALSH, PLAINTIFF was compensated under a day-rate scheme, receiving payment per day of work regardless of the hours she worked that day. Despite consistently working 14-to-16-hour workdays, often until 4 a.m., averaging well over 40 hours per week, and being on call at all times, PLAINTIFF received no additional compensation for her excessive workload. She was the only employee subject to the day-rate structure, which translated to approximately $7.00 less per hour than her male counterparts, excluding considerations such as overtime and not being required to be on call for the 24 hours during the days she worked.

46.    PLAINTIFF immediately complained to BURNSIDE regarding the clear pay discrepancy and inputted her hours into VALSH's system such that it would reflect her disproportionately heavy workload—attempting to receive her legally entitled wages. BURNSIDE dismissed PLAINTIFF's complaints and threatened to terminate PLAINTIFF if she did not falsify her reported hours. As such, PLAINTIFF was again forced to underreport her hours and continued to be unlawfully underpaid.

47.    When PLAINTIFF attempted to adjust her hours, Director of Operations for CONSTELLIS/TRIPLE CANOPY, Kristian Kluzinski ("KLUZINSKI"), was notified and questioned the retroactive changes. PLAINTIFF explained she was being paid incorrectly, and that BURNSIDE threatened her employment in response to her complaints. Despite this disclosure, KLUZINSKI took no reasonable steps to address the discrimination or unlawful denial of wages, and PLAINTIFF continued to be unlawfully underpaid.

48.    In or around May 2022, FOX's security department travelled to Alabama for the USFL League Startup event. While at their hotel, BURNSIDE informed PLAINTIFF he needed to pick something up from a hotel room. Notably, BURNSIDE made it clear that they were not heading to the room he was staying in—as PLAINTIFF would never have agreed to go to BURNSIDE's room.

49.    Once PLAINTIFF and BURNSIDE arrived at the room, PLAINTIFF asked whose room it belonged to. BURNSIDE responded it was his spare room. In the same breath, BURNSIDE

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

abruptly shoved PLAINTIFF onto the bed and pinned her down. PLAINTIFF immediately went into a state of shock, dissociation, and immobility. BURNSIDE forcibly removed PLAINTIFF's pants and digitally and orally penetrated PLAINTIFF's vagina. PLAINTIFF is informed and believes, and thereon alleges, that BURNSIDE reserved a spare room and goaded PLAINTIFF there for the sole purpose of committing sexual violence against her.

50.     Following the sexual assault and battery, BURNSIDE continued his pattern of harassment and retaliation. BURNSIDE would often refer to PLAINTIFF as his personal assistant in front of others or on social media, which was never PLAINTIFF's role at any time during her employment. Furthermore, in or around September 2022, when PLAINTIFF attempted to take time off for a scheduled vacation, BURNSIDE repeatedly threatened to withhold her wages, terminate her employment, and oust her as a member of the LGBTQ+ community if she took time off. These threats and demeaning conduct were part of BURNSIDE's ongoing effort to maintain control over PLAINTIFF and exert authority beyond their employment relationship to ensure her silence. Notably, BURNSIDE's threat to expose PLAINTIFF's sexual orientation was only effective because BURNSIDE knew and expected that GANNY and other FOX executives would discriminate and retaliate against PLAINTIFF because of her sexual orientation.

51.     In or around early 2023, PLAINTIFF was passed over for a promotion to the role of Director of USFL Security. PLAINTIFF and another member of the security department, Mark Littlestone ("LITTLESTONE")—a Caucasian male—were candidates for the role. PLAINTIFF was the clear and natural choice as she had received consistent praise for her performance from both FOX security leadership and USFL executives. Whereas LITTLESTONE lacked relevant experience and had a history of poor performance, PLAINTIFF—serving as Security Operations Manager—had already been successfully performing the duties of the director role.

52.     In fact, Director of Special Events for the FOX security department, Jared Rasmussen (hereinafter, "RASMUSSEN"), repeatedly advised GANNY that PLAINTIFF was the only appropriate choice and that it was unreasonable they were considering LITTLESTONE, given his history of poor performance. During a conversation, GANNY acknowledged that even the USFL executives themselves had requested PLAINTIFF for the role.

53.     Of note, RASMUSSEN was not the only one who recognized PLAINTIFF's excellence. GANNY, OCHOTORENA, and USFL executives had all previously praised PLAINTIFF and expressed gratitude for her invaluable contributions. PLAINTIFF had earned herself an extraordinary and widely acknowledged reputation.

54.     Notwithstanding the request by USFL executives and the strong recommendations by RASMUSSEN, OCHOTORENA and GANNY, PLAINTIFF was ultimately denied the role of Director of USFL Security. PLAINTIFF is informed and believes that this was solely due to the discriminatory animus held against PLAINTIFF and not based on her merits.

55.     Despite enduring persistent discrimination, harassment, and sexual violence, PLAINTIFF remained committed to performing her duties with professionalism and excellence. Ultimately, however, the cumulative abuse and discrimination forced PLAINTIFF to a breaking point.

56.     On or about February 19, 2023, PLAINTIFF reported BURNSIDE's conduct to RASMUSSEN, detailing the sexual assault and battery she was subjected to. PLAINTIFF, familiar with FOX's deeply sexist culture, feared retaliation and requested to remain anonymous.

57.     On the same day, RASMUSSEN immediately attempted to escalate her disclosure to GANNY. At all relevant times after RASMUSSEN's complaint, GANNY and other FOX executives and human resources agents never once displayed sympathy or even belief of the sexual violence that PLAINTIFF suffered. Instead, FOX began a campaign of bullying, intimidation, and retaliation in order to silence PLAINTIFF and RASMUSSEN.

58.     Despite being informed of serious allegations of sexual assault, GANNY failed to take immediate and reasonable action. Although RASMUSSEN emphasized that the victim feared retaliation and wished to stay anonymous, GANNY stated FOX would not take action unless the victim came forward. GANNY dismissed RASMUSSEN's complaint, stating he was at dinner and abruptly ended the call.

59.     A few days later, RASMUSSEN escalated PLAINTIFF's complaints by sending a written report to OCHOTORENA and GANNY detailing the sexual battery and assault reported to him. Of note, in his report as well as all his verbal interactions, RASMUSSEN made it a point to

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

conceal any identifying information of the victim by using gender neutral descriptors and ambiguous terms regarding the position and employment status of the victim.

60.     On or about February 23, 2023, DRUKER and WILLIAMS, Vice President of human resources and Vice President of employee relations, invited RASMUSSEN to a virtual meeting to discuss his report. From the onset of receiving constructive knowledge of severe allegations of sexual violence, it was clear DRUKER and WILLIAMS had no genuine intent to discover the truth. Rather, they conducted a sham investigation solely aimed at identifying—and silencing—the whistleblower.  As soon as the meeting began, instead of asking for relevant details, DRUKER and WILLIAMS tried to pressure RASMUSSEN into disclosing PLAINTIFF's identity.

61.     RASMUSSEN continued to emphasize the victim's wish to remain anonymous and concern for retaliation. In response, DRUKER and WILLIAMS threatened to terminate RASMUSSEN. DRUKER and WILLIAMS accused RASMUSSEN of "not complying" with the investigation and threatened that employees who did not comply with investigations were subject to termination. At all relevant times, RASMUSSEN complied with the investigation. The only thing RASMUSSEN did not disclose was the identity of the survivor, which FOX should have shared an interest in protecting as well.

62.     In the following days, GANNY, DRUKER, and WILLIAMS continued to intimidate and threaten RASMUSSEN, however, RASMUSSEN never shared any information identifying the victim.

63.     As such, FOX pivoted their strategy and launched a witch hunt for the whistleblower. DRUKER and WILLIAMS, assuming the sex of the victim of BURNSIDE's sexual violence, began cold calling all women who had worked with BURNSIDE and tried to intimidate them into coming forward.

64.     On or about March 10, 2023, DRUKER and WILLIAMS reached PLAINTIFF. Falsely representing themselves as "fox legal," DRUKER and WILLIAMS interrogated PLAINTIFF and, similar to RASMUSSEN's meeting, they were using the guise that they would "help" in order for her to disclosure her identity. Ultimately, PLAINTIFF disclosed her identity as the victim and whistleblower believing she had no other options.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

65.    PLAINTIFF disclosed to DRUKER and WILLIAMS what occurred, including details of the car accident. DRUKER and WILLIAMS were completely apathetic and did not bother to obtain further details.

66.    Although PLAINTIFF explicitly informed DRUKER and WILLIAMS of BURNSIDE's prior retaliation against her for resisting his various forms of abuse and pleaded with them to protect her identity, DRUKER and WILLIAMS not only failed to take reasonable action to prevent further discrimination, harassment, and retaliation but, with reckless disregard for PLAINTIFF's safety, disclosed PLAINTIFF's identity as the victim and whistleblower to BURNSIDE and the rest of the executive team.

67.    On or about March 27, 2023, DRUKER and WILLIAMS called PLAINTIFF and informed her that FOX had determined BURNSIDE's sexual assault and battery of PLAINTIFF was "consensual." BURNSIDE had lied and claimed PLAINTIFF voluntarily undressed and initiated the sexual contact. PLAINTIFF adamantly disputed BURNSIDE's lies. Despite never conducting any meaningful investigation and with no reason to believe BURNSIDE over PLAINTIFF, DRUKER and WILLIAMS continued to insist that the sexual battery was consensual.

68.    PLAINTIFF requested that FOX at least ensure that she would no longer be required to work with BURNSIDE—a request FOX could have easily accommodated. However, DRUKER and WILLIAMS again dismissed PLAINTIFF's legitimate safety concerns and asked, "Do you really have to work with him that often though?" Although PLAINTIFF was stunned by the inexplicable reluctance to provide any sort of protection, she emphasized that she regularly worked with BURNSIDE. DRUKER and WILLIAMS remained indifferent and continued to downplay the danger PLAINTIFF faced, commenting that PLAINTIFF did not have to work with BURNSIDE in-person "all the time." The meeting concluded with no meaningful protection offered to PLAINTIFF.

69.    A few days after this meeting, WILLIAMS and DRUKER invited PLAINTIFF to another virtual meeting. It was immediately apparent DRUKER and WILLIAMS did treat the matter seriously. DRUKER hastily joined the call, laughingly explained she was not prepared for the meeting, and verbally reminded herself this call was for PLAINTIFF's complaints. DRUKER and WILLIAMS informed PLAINTIFF they intended to resolve the matter today because they had a

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

two-week vacation planned. They then stated the investigation was inconclusive and nonchalantly remarked, "what you and [BURNSIDE] do in your personal lives is none of FOX's business"—again attempting to frame PLAINTIFF's rape as consensual.

70.     This final insult concluded FOX's sham investigation. BURNSIDE was never disciplined, and no meaningful protection was ever provided to PLAINTIFF. In effect, in response to PLAINTIFF's severe allegations of sexual assault and battery, FOX forced PLAINTIFF into identifying herself as the victim and whistleblower—a traumatic and difficult ordeal—under threat of termination, disclosed her identity to everyone, including the assailant, attempted to gaslight her into believing that the rape she suffered was consensual, and forced her to continue working with her assailant. FOX wholly condoned, affirmed, and exacerbated the sexual violence PLAINTIFF suffered.

71.     Although BURNSIDE was terminated soon after for an unrelated matter relating to his fraudulent business activities, following PLAINTIFF's protected whistleblower activity, she felt an immediate and palpable shift in the way FOX's executives treated her. When GANNY announced BURNSIDE's termination, he framed BURNSIDE's departure from FOX as voluntary and stated BURNSIDE was onto "bigger and better things." Despite having constructive knowledge of PLAINTIFF's allegations against BURNSIDE, GANNY openly expressed his disapproval of BURNSIDE's termination. Immediately following this announcement, GANNY aggressively berated PLAINTIFF.

72.     OCHOTORENA and GANNY initiated a retaliatory scheme against PLAINTIFF which began with her exclusion from important team meetings. Specifically, OCHOTORENA retroactively cancelled the invite links for the team meetings sent to PLAINTIFF. Notably, PLAINTIFF had attended these meetings for years as they were essential to her job duties. However, as a direct retaliatory act for her complaints, she was excluded from all such meetings. Additionally, GANNY also began unfairly blaming PLAINTIFF for various issues which she was not responsible for, aggressively accosting PLAINTIFF on multiple occasions.

73.     In or around May 2023, PLAINTIFF was removed from the game agenda email list, drastically hindering PLAINTIFF's ability to perform her job as she was no longer receiving

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

important and necessary notifications. For the next few weeks, FOX and multiple executives continued to sideline and stonewall PLAINTIFF.

74.     In or around July 2023, FOX terminated RASMUSSEN, who did his best to escalate PLAINTIFF's complaints and protect her identity—foreshadowing PLAINTIFF's own termination. Around the same time, the FOX security department travelled to Australia. During this event, GANNY exclusively assigned PLAINTIFF to low-level functions significantly below her level of experience and expertise and completely unrelated to her role. For example, GANNY assigned PLAINTIFF to act as a concierge, despite PLAINTIFF being unfamiliar with the area and the hotel already having a concierge. Notably, during this time, the security department was severely understaffed, with BURNSIDE and RASMUSSEN recent terminations, and the department desperately required PLAINTIFF to perform her usual role. In fact, multiple members of the security department requested PLAINTIFF's assistance, which GANNY prevented. As such, it was clear that GANNY assigned PLAINTIFF to these duties as a part of his ongoing retaliation against PLAINTIFF for her protected activities.

75.     Further evidencing the retaliatory animus, PLAINTIFF was officially demoted back to security coordinator in or around August 2023. Soon thereafter, PLAINTIFF's fox electronic mail account was deactivated, signaling PLAINTIFF's termination.

76.     Unsurprisingly, on or about September 21, 2023, FOX terminated PLAINTIFF's employment, refusing to renew her contract. FOX claimed PLAINTIFF was not terminated because of PLAINTIFF's performance but because FOX was no longer contracting "full month agents." FOX had never contracted any "full month agents," and it was certainly not a term that was ever previously applied to PLAINTIFF's employment relationship with FOX. Despite FOX's claim, FOX continued to contract CONSTELLIS/TRIPLE CANOPY employees, evidenced by CONSTELLIS/TRIPLE CANOPY's instruction that PLAINTIFF train other CONSTELLIS/TRIPLE CANOPY employees for their new roles within FOX's security department.

77.     Of note, CONSTELLIS/TRIPLE CANOPY was made aware of PLAINTIFF's reports of sexual violence, as well as the unlawful denial of her wages. CONSTELLIS/TRIPLE

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1   CANOPY shared a legal obligation to protect PLAINTIFF. However, CONSTELLIS/TRIPLE

2   CANOPY similarly failed to take any reasonable action to protect PLAINTIFF.

3       78.    In spite of the years of discrimination, abuse, and violence, PLAINTIFF dedicated

4   herself to FOX and earned herself a reputation of excellence and professionalism. In response to

5   PLAINTIFF's stand against her assailant, FOX actively facilitated and participated in the retaliation

6   against PLAINTIFF, culminating in her wrongful termination. FOX's malicious and deliberate

7   mishandling of PLAINTIFF's complaints—including but not limited to outing PLAINTIFF as the

8   victim and whistleblower against her will, attempting to gaslight her into believing the rape she

9   endured was consensual, forcing her to continue working with her assailant after informing him of

10  her reports against him, and engaging in various forms of retaliation against her for her complaints—

11  has inflicted and exacerbated the trauma PLAINTIFF carries to this day.

12      79.    PLAINTIFF has suffered financially and emotionally as a result of DEFENDANTS'

13  multiple forms of discrimination, harassment, retaliation.

14      80.    PLAINTIFF now commences this suit against DEFENDANTS, and each of them,

15  and alleges the following:

16                          **FIRST CAUSE OF ACTION**

17                  **Gender Discrimination in Violation of FEHA**

18      **(As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100)**

19      81.    PLAINTIFF incorporates by reference, repeats and re-alleges, all preceding and

20  subsequent paragraphs as though fully set forth herein.

21      82.    FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100 were

22  PLAINTIFF's employers at all relevant times mentioned herein; and PLAINTIFF was an employee

23  of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100.

24      83.    At all times herein mentioned, Government Code §§ 12940 et seq., was in full force

25  and effect and was binding on FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1

26  through 100. The FEHA, pursuant to Government Code § 12940(a), prohibits gender discrimination

27  and/or requires DEFENDANTS to refrain from discrimination against any employee because of

28  their gender. "Gender" means sex, and includes a person's gender identity and gender expression.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

(Government Code § 12926(r)(2).) Gender expression" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth. (Ibid.)

84.    PLAINTIFF is a female.

85.    During PLAINTIF's employment, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100's subjected PLAINTIFF to disparate treatment via several adverse employment actions including but not limited to: 1) sexually harassing and abusing PLAINTIFF, 2) treating her materially different than other employees, 3) failing to provide her with equal pay as her male counterparts, 4) denying her a promotion, retaliating against her on account of her complaints of sexual harassment and abuse, 5) overlooking her for a promotion, 6) demoting her, and 7) ultimately wrongfully terminating her employment.

86.    PLAINTIFF's gender – e.g. that she is female – was a substantial motivating reason for FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100's decision to subject PLAINTIFF to each and every aforementioned adverse employment actions.

87.    As a result of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100's various adverse employment actions mentioned throughout this Complaint, PLAINTIFF has suffered financially, physically, and emotionally.

88.    In light of the willful, knowing, and intentional discrimination by FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100, PLAINTIFF seeks an award of punitive and exemplary damages in an amount according to proof at trial.

89.    PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees. PLAITNIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit.

## SECOND CAUSE OF ACTION

### Sexual Orientation Discrimination in Violation of FEHA

### (As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH and DOES 1 through 100)

90.    PLAINTIFF incorporates by reference, repeats and re-alleges, all preceding and subsequent paragraphs as though fully set forth herein.

91.    At all times mentioned herein, PLAINTIFF was an employee protected by Government Code section 12940(a), which prohibits discrimination in employment on the basis of

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1 sex.

2    92.    At all times mentioned herein, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH,

3 AND DOES 1 through 100 were "employers" within the meaning of California Government Code

4 section 12926, and as such, were prohibited from discriminating in regard to terms, conditions, or

5 privileges of employment, including adverse employment actions and terminations on the basis of

6 sexual orientation.

7    93.    PLAINTIFF is a bisexual female.

8    94.    PLAINTIFF is informed and believes and thereon alleges that PLAINTIFF's sexual

9 orientation was a motivating factor in FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND

10 DOES 1 through 100's wrongdoing in this case.

11    95.    FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100

12 discriminated against PLAINTIFF by treating PLAINTIFF differently based on her sexual

13 orientation. The discriminatory acts included, among other things, outing her sexual orientation

14 against her will, delaying her contract, and ultimately terminating her employment

15    96.    FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100

16 knew or should have known of these, and other discriminatory actions taken against PLAINTIFF

17 by FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100's agents,

18 managers, supervisors and/or employees.

19    97.    PLAINTIFF's sexual orientation was a motivating reason for FOX,

20 CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100's disparate treatment,

21 discrimination, and retaliation against PLAINTIFF.

22    98.    PLAINTIFF was mentally, physically, and financially harmed because of FOX,

23 CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100's disparate treatment.

24 FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100's conduct was a

25 substantial factor in causes PLAINTIFF's mental, physical and financial harm. By engaging in the

26 above referenced acts and omissions, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND

27 DOES 1 through 100, and each of them, wrongfully discriminated against PLAINTIFF in violation

28 of FEHA.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

99.     As a direct, foreseeable and proximate result of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100's behavior, PLAINTIFF has suffered, and continues to suffer, damages in an amount according to proof at trial.

100.    In light of the willful, knowing, and intentional discrimination and retaliation by FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, AND DOES 1 through 100, PLAINTIFF seeks an award of punitive and exemplary damages in an amount according to proof at trial. Moreover, PLAINTIFF has incurred, and will continue to incur economic loss and emotional distress. PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees and costs that may be recoverable as the prevailing party at time of trial.

### THIRD CAUSE OF ACTION

### Race Discrimination in Violation of FEHA

### (As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100)

101.    PLAINTIFF incorporates by reference, repeats, and realleges, each and every preceding and subsequent paragraph as though fully set forth herein.

102.    At all times herein mentioned, Government Code § 12940(a), was in full force and effect and was binding on FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100. The Fair Employment and Housing Act ("FEHA"), pursuant to Government Code § 12490(a), prohibits race discrimination and/or requires FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 to refrain from discriminating against any employee because of his or her race.

103.    At all relevant times mentioned herein, PLAINTIFF and FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 were in an employee/employer relationship.

104.    PLAINTIFF is a Black female.

105.    FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 had knowledge of PLAINTIFF's race. Further, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 knew of its employees and supervisors, conducting themselves in an unlawful, discriminatory, and harmful manner toward PLAINTIFF based on her race.

106. FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 endorsed, ratified and/or approved race discrimination in the workplace. PLAINTIFF's race was a substantial motivating reason for FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's decision to deny PLAINTIFF employment benefits, deny her equal pay, pass her over for a promotion, as well as engage in harassing behavior. Most notably, GANNY and numerous FOX executives made discriminatory and racially charged comments towards Black individuals.

107. FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's conduct was a substantial factor in causing PLAINTIFF's mental, physical, and financial harm.

108. By engaging in the above referenced acts and omissions, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100, and each of them, wrongfully discriminated against PLAINTIFF in violation of California Government Code. §§ 12940, et seq.

109. As a result of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's unlawful conduct, PLAINTIFF suffered and continues to suffer economic loss or disadvantage both as to earnings and benefits, emotional distress, including but not limited to, depression, decline in health, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish.

110. PLAINTIFF is entitled to and will seek exemplary, general, and compensatory damages and attorney's fees and costs against FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 in amounts to be proven at trial in addition to interest thereon and any and all other remedies and damages available under the applicable laws.

## FOURTH CAUSE OF ACTION

### Harassment and Hostile Work Environment in Violation of FEHA

### (As to All DEFENDANTS)

111. PLAINTIFF incorporates by reference, repeats and re-alleges, all preceding and subsequent paragraphs as though fully set forth herein.

112. At all times mentioned herein, PLAINTIFF was an employee protected by Government Code section 12940(a), which prohibits discrimination in employment on the basis of

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1    sex.

2    113.    At all relevant times, California Government Code § 12940 was in full effect and

3    binding on DEFENDANTS. Specifically, FEHA makes it unlawful for an employer and/or an

4    employee to subject another employee to harassment based on the employee's membership within

5    a protected group, including gender, sexual orientation, and race.

6    114.    As detailed in this Complaint, PLAINTIFF was subjected to harassment because of

7    her membership to a protected class – gender, sexual orientation, and race. Notably, PLAINTIFF

8    was denied fair and equal treatment because of her protected characteristics.

9    115.    DEFENDANTS created and permitted a hostile work environment for PLAINTIFF,

10    making the conditions of her employment intolerable in direct contravention of various statutes and

11    state law decisions, including but not limited to California Government Code section 12940(j).

12    116.    PLAINTIFF was further subjected to abusive conduct within the meaning of

13    California Government Code section 12950.1(g)(2). "Abusive conduct" is defined to mean "conduct

14    of an employer or employees in the workplace, with malice, that a reasonable person would find

15    hostile, offensive, and unrelated to an employer's legitimate business interests." Cal. Gov. Code §

16    12950.1. The conduct by DEFENDANTS, as alleged herein, is severe and egregious and was

17    directed towards PLAINTIFF in order to harass and demean her based on her gender, sexual

18    orientation, and race.

19    117.    PLAINTIFF was subjected to several unwelcomed sexual advances, harassment,

20    assaults, and battery from BURNSIDE. PLAINTIFF was also subjected to racial discrimination in

21    the form of discriminatory and demeaning comments towards Black people and PLAINTIFF.

22    PLAINTIFF was discriminated based on her sexual orientation, especially evident in

23    DEFENDANTS' outing of PLAINTIFF's sexual orientation against her will. The pervasive and

24    unlawful conduct allowed by DEFENDANTS was so severe and pervasive, such that it created a

25    hostile work environment. Such hostility was allowed, condoned, and affirmed by FOX,

26    CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100.

27    118.    PLAINTIFF complained to DEFENDANTS regarding the sexually harassing and

28    hostile work environment. Moreover, PLAINTIFF's complaints were based on her gender – e.g.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

that she is female – and that she was subjected to sexual violence. FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's failure to take PLAINTIFF's complaints seriously facilitated the progressive escalation of the hostility PLAINTIFF was subjected to.

119.    The sexual harassment and violence that DEFENDANTS allowed PLAINTIFF to be subjected to was sufficiently pervasive in that it altered the conditions of her employment and created a hostile work environment. Importantly, DEFENDANTS harassment caused PLAINTIFF to suffer severe emotional distress.

120.    FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100, its upper management and owners, participated and allowed for such unlawful sexual harassment to take place while PLAINTIFF was under their employ.

121.    DEFENDANTS knew or should have known of the hostile and harassing conduct because PLAINTIFF directly complained to DEFENDANTS, who failed to take immediate and appropriate action. Instead, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 promoted and encouraged a sexually harassing environment towards women by allowing men to freely harass, assault, and batter female employees without any repercussions, as evidenced by the sham investigation and subsequent retaliation of PLAINTIFF following her complaints.

122.    The harassment and abuse ratified by DEFENDANTS unreasonably interfered with PLAINTIFF's work environment.

123.    A reasonable person in PLAINTIFF's position would have considered the work environment to be hostile or abusive.

124.    PLAINTIFF was severely harmed by DEFENDANTS' wrongful conduct, and the hostile or abusive environment created by DEFENDANTS, which was ratified and condoned by DEFENDANTS.

125.    As a result of DEFENDANTS' unlawful conduct, PLAINTIFF suffered and will continue to suffer economic loss or disadvantage and emotional distress, including but not limited to fatigue, depression, a general decline in health, sustained and prolonged pain and suffering, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. PLAINTIFF is

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1  accordingly entitled to exemplary, general and compensatory damages and attorney's fees and costs

2  in amounts to be proven at trial.

### FIFTH CAUSE OF ACTION

**Retaliation in Violation of FEHA**

**(As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100)**

6  126.    PLAINTIFF incorporates by reference, repeat and re-allege, each and every

7  allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

8  127.    PLAINTIFF complained to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and

9  DOES 1 through 100 – specifically to BURNSIDE, OCHOTORENA, GANNY, DRUKER, and

10  WILLIAMS, as well as managing agent of CONSTELLIS/TRIPLE CANOPY KLUZINSKI

11  concerning the discrimination and sexual harassment she was subjected to on account of her gender.

12  128.    In response thereto, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1

13  through 100 retaliated against PLAINTIFF by 1) failing to address any of her complaints, 2)

14  disclosing her identity as the whistleblower to her assailant, 3) attempting to gaslight her into

15  believing the sexual violence she suffered was consensual, 4) stonewalling her, 5) demoting her,

16  further forcing her to work in a hostile and abusive work environment, and 6) ultimately terminating

17  PLAINTIFF's employment. This is a non-exhaustive list of the adverse employment actions to

18  which PLAINTIFF was subjected.

19  129.    By engaging in the above-referenced acts and omission, CONSTELLIS/TRIPLE

20  CANOPY, VALSH, and DOES 1 through 100, and each of them, retaliated against PLAINTIFF

21  because she participated in protected activities in violation of Government Code §§12940 et seq.

22  130.    PLAINTIFF engaging in these protected activities were motivating reasons for

23  CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 to retaliate against

24  PLAINTIFF.

25  131.    As a result of CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through

26  100's wrongful conduct, PLAINTIFF sustained and continues to sustain losses in earnings and other

27  employment benefits.

28  132.    CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's retaliatory

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

1 conduct was a substantial factor in causing PLAINTIFF's harm.

2     133.   As a result of CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through

3 100's unlawful conduct, PLAINTIFF suffered and will continue to suffer economic loss or

4 disadvantage and emotional distress, including but not limited to fatigue, depression, a general

5 decline in health, sustained and prolonged pain and suffering, anxiety, embarrassment, humiliation,

6 loss of self-esteem, and mental anguish. PLAINTIFF is accordingly entitled to exemplary, general

7 and compensatory damages and attorney's fees and costs in amounts to be proven at trial.

8 **SIXTH CAUSE OF ACTION**

9 **Whistleblower Retaliation in Violation of Labor Code § 1102.5**

10 **(As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100)**

11     134.   PLAINTIFF incorporates by reference, repeats and re-alleges, all preceding and

12 subsequent paragraphs as though fully set forth herein.

13     135.   Labor Code § 1102.5 prohibits employers from retaliating against employees who

14 reported reasonably believed violations of state or federal laws, rules, or regulations to a government

15 or law enforcement agency. With the adoption of SB 496 in 2013, California legislature extended

16 this protection to employees who report suspected illegal behavior to "a person with authority over

17 the employee or another employee who has 'authority to investigate, discover, or correct' an

18 employer for violating or failing to comply with a local, state, or federal rule or regulation."

19     136.   PLAINTIFF made complaints to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH,

20 and DOES 1 through 100 regarding the sexual harassment and violence, discrimination, pay

21 inequity, and retaliation she was subjected to in violation of Government Code §§ 12940 et seq.

22 "FEHA". She explicitly complained to RASMUSSEN, DRUKER, and WILLIAMS regarding the

23 assault and battery she was subjected to by BURNSIDE. These complaints were made aware to

24 multiple other managing agents of FOX and CONSTELLIS/TRIPLE CANOPY, including

25 OCHOTORENA. Notably, this disclosure protected PLAINTIFF against retaliation under Labor

26 Code § 1102.5.

27     137.   Despite the Labor Codes in place, FOX, CONSTELLIS/TRIPLE CANOPY,

28 VALSH, and DOES 1 through 100 ultimately retaliated against PLAINTIFF by 1) failing to address

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

any of her complaints, 2) disclosing her identity as the whistleblower to her assailant, 3) attempting to gaslight her into believing the sexual violence she suffered was consensual, 4) stonewalling her, 5) demoting her, further forcing her to work in a hostile and abusive work environment, and 6) ultimately terminating PLAINTIFF's employment. This is a non-exhaustive list of the adverse employment actions to which PLAINTIFF was subjected.

138.    Furthermore, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's retaliatory efforts were intentional and meant to subject PLAINTIFF to cruel and unjust hardship in conscious disregard of PLAINTIFF's rights.

139.    In light of the willful and malicious, fraudulent, and/or oppressive acts of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100, PLAINTIFF seeks an award of punitive and exemplary damages in an amount according to proof at trial.

140.    As a direct result of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100's conduct, PLAINTIFF suffered and continues to suffer from, loss of wages, humiliation, anxiety, severe emotional distress, special damages, and general damages according to proof at the time of trial.

141.    In addition to the foregoing damages, under Labor Code § 1102.5, PLAINTIFF is entitled to civil penalties of up to $10,000 per violation under this section.

142.    Furthermore, PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees. PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit.

**SEVENTH CAUSE OF ACTION**

**Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA**

**(As to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100)**

143.    PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and subsequent paragraphs as though fully set forth herein.

144.    PLAINTIFF was an employee of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100 at all times relevant herein.

145.    At all relevant times California Government Code § 12940 was in full effect and

1   binding on FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through 100. Notably,

2   FEHA creates a separate and distinct cause of action for employer's failure to take all reasonable

3   steps to prevent harassment, discrimination, and retaliation.

4   146.    PLAINTIFF was subjected to unlawful conduct, sexual harassment, discrimination,

5   and retaliation as alleged in this Complaint.

6   147.    PLAINTIFF made complaints to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH,

7   and DOES 1 through 100 regarding the sexual harassment and violence, discrimination, and

8   retaliation she was subjected to. She explicitly complained to RASMUSSEN regarding the assault

9   and battery she was subjected to. RASMUSSEN then escalated those complaints. DEFENDANTS,

10  and each of them, was made aware and had constructive knowledge of PLAINTIFF's complaints

11  and allegations. As a result of FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1

12  through 100 inaction, PLAINTIFF continued to experience discrimination, harassment, and

13  retaliation. Additionally, FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and DOES 1 through

14  100 further ratified this conduct by opting to wrongfully terminate PLAINTIFF.

15  148.    As a result, PLAINTIFF was harmed.

16  149.    As a result of DEFENDANTS' unlawful conduct, PLAINTIFF suffered and

17  continues to suffer economic loss or disadvantage both as earnings and benefits, and emotional

18  distress, including depression, decline in health, anxiety, embarrassment, humiliation, loss of self-

19  esteem, and mental anguish.

20  150.    PLAINTIFF is entitled to and will seek exemplary, general, and compensatory

21  damages and attorneys' fees and costs as to FOX, CONSTELLIS/TRIPLE CANOPY, VALSH, and

22  DOES 1 through 100 in amounts to be proven at trial in addition to interest thereon and any and all

23  other remedies and damages available under the applicable laws.

24  ### EIGHTH CAUSE OF ACTION

25  **Wrongful Termination in Violation of Public Policy**

26  **(As to FOX and DOES 1 through 100)**

27  151.    PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and

28  subsequent paragraphs.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

152.    PLAINTIFF was an employee of FOX and DOES 1 through 100 at all relevant times mentioned herein and at all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated in California Government Code § 12940 is to prohibit employers from discriminating, harassing, and retaliating against any individual based on, among other things, gender, race, sexual orientation, opposing abusive conduct, and upon exercise of rights under that Section. This public policy is designed to protect all employees to promote the welfare and well-being of the community at large. Accordingly, the actions of DEFENDANTS, and each of them, in discriminating, harassing, and retaliating against PLAINTIFF on the grounds stated above were wrongful and in contravention and violation of the expressed public policy of the State of California and the laws and regulations promulgated thereunder.

153.    PLAINTIFF was subjected to working conditions that violated public policy, in that PLAINTIFF was forced to work in an increasingly hostile environment and was subjected to intentional discrimination, retaliation, and sexual harassment and violence as alleged in this Complaint.

154.    FOX and DOES 1 through 100 wrongfully terminated PLAINTIFF's employment following her complaints of harassment, sexual violence, discrimination, and retaliation.

155.    FOX and DOES 1 through 100's wrongful termination of PLAINTIFF's employment was a substantial factor in causing PLAINTIFF's harm.

156.    It is unlawful for an employer to retaliate and/or discharge an employee for internal disclosure of "illegal unethical, or unsafe practices" which affect the public at large, not merely the employer.

157.    PLAINTIFF was assaulted, battered, harassed, discriminated, and retaliated against, and ultimately terminated in violation of public policy.

158.    In so doing, the managing agents and/or officers of FOX and DOES 1 through 100 acted with oppression, fraud, and malice, as those terms are used in California Civil Code § 3294. AS such, PLAINTIFF is entitled to an award of punitive damages.

159.    As a result of the aforesaid acts, PLAINTIFF has lost, and will continue to lose, substantial earnings, promotional opportunities, fringe benefits and has suffered and/or will suffer

1   other actual, consequential and incidental financial losses, in an amount to be proven at trial in

2   excess of the jurisdictional minimum of this Court.

3       160.    As a result of the foregoing, PLAINTIFF has become mentally upset, distressed,

4   embarrassed, humiliated, and aggravated in a sum in excess of the jurisdictional minimum of this

5   Court.

6                             **NINTH CAUSE OF ACTION**

7                    **Negligent Supervision, Retention, and Hiring**

8                    **(As to FOX and DOES 1 through 100)**

9       161.    PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and

10  subsequent paragraphs.

11      162.    FOX and DOES 1 through 100 owed a duty of care to PLAINTIFF to appoint, hire,

12  retain, and supervise persons who would not engage in discriminatory, harassing, and/or retaliatory

13  conduct. FOX and DOES 1 through 100 owed a duty of care to PLAINTIFF not to retain managers

14  or employees who would discriminate, harass, or retaliate against employees for engaging in

15  protected activities. FOX and DOES 1 through 100 owed a duty of care to PLANTIFF to supervise

16  their managers and employees closely to ensure that they would refrain from discriminating,

17  harassing, or retaliating against PLAINTIFF.

18      163.    FOX and DOES 1 through 100 breached these duties by permitting BURNSIDE,

19  OCHOTORENA, GANNY, DRUKER, and WILLIAMS to discriminate, harass, and retaliate

20  against PLAINTIFF after engaging in protected activities of blowing the whistle on DEFENDANTS

21  unlawful conduct.

22      164.    PLAINTIFF is informed and believes and thereon alleges that at all times relevant

23  herein, FOX and DOES 1 through 100 knew or should have known through reasonable inspection,

24  of BURNSIDE, OCHOTORENA, GANNY, DRUKER, and WILLIAMS' propensity for abusive,

25  hostile, discriminatory, and retaliatory conduct directed at PLAINTIFF.

26      165.    As a result of FOX and DOES 1 through 100's aforementioned actions and

27  omissions, PLAINTIFF has suffered, and will continue to suffer physical, emotional and economic

28  harms herein alleged.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

166.    PLAINTIFF has incurred and continues to incur legal expenses and attorney's fees and costs. PLAINTIFF will seek the recovery of her attorney's fees and costs at the conclusion of this lawsuit.

### TENTH CAUSE OF ACTION

**Unlawful, Unfair, and Fraudulent Business Practices in Violation of Bus. & Prof. Code §§ 17200, et seq.**

**(As to FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100)**

167.    PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and subsequent paragraphs.

168.    FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 was PLAINTIFF's legal employer at all times relevant herein; and PLAINTIFF was an employee of FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 at all times relevant herein.

169.    California Business and Professional Code Section 17200 et seq. prohibits unfair competition in the form of an unlawful, unfair, or fraudulent business act or practice.

170.    FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 committed unlawful, unfair, or fraudulent business acts and practices as defined by California Business and Professions Code § 17200.

171.    As a direct result of FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100's unlawful, unfair, and/or fraudulent acts and practices described herein, PLAINTIFF has suffered economic injuries. FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 has profited from their unlawful, unfair, and/or fraudulent acts and practices. Specifically, in the amount of unpaid wages and underpayment of PLAINTIFF at all times in addition to the off-the-clock work she performed.

172.    By all of the foregoing alleged conduct, FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 has committed, and is continuing to commit, ongoing unlawful, unfair and fraudulent business practices within the meaning of Cal. Business & Professions Code § 17200 et seq. As a direct and proximate result of the unfair business practices described above, PLAINTIFF has suffered significant losses and FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 has

1    been unjustly enriched.

2        173.    Pursuant to Cal. Business and Prof. Code § 17203, PLAINTIFF is entitled to: (a)

3    restitution of money acquired by FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100 by

4    means of their unfair business practices, in amounts not yet ascertained but to be ascertained at trial;

5    and (b) a declaration that FOX, TRIPLE/CANOPY, VALSH and DOES 1 through 100's business

6    practices are unfair within the meaning of the statute.

7        174.    PLAINTIFF has assumed the responsibility of enforcement of the laws and lawful

8    claims specified herein. There is a financial burden incurred in pursuing this action which is in the

9    public interest. Therefore, reasonable attorneys' fees are appropriate pursuant to Cal. Code 23 or

10   Civil Procedure § 1021.

### ELEVENTH CAUSE OF ACTION

### Sex Trafficking under 18 U.S.C. § 1591, et seq.

### (As to BURNSIDE, VALSH, and DOES 1 through 100)

14       175.    PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and

15   subsequent paragraphs.

16       176.    PLAINTIFF is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591

17   (a) and (b) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

18       177.    BURNSIDE, VALSH, and DOES 1 through 100's acts and omissions, taken

19   separately and/or together, as outlined above, constitute a violation of 18 U.S.C. § 1595. Defendant

20   BURNSIDE, VALSH, and DOES 1 through 100 perpetrated sex trafficking of PLAINTIFF by

21   requiring her to engage in forced sexual acts in multiple jurisdictions. At all relevant times,

22   BURNSIDE, VALSH, and DOES 1 through 100 participated in and facilitated the harboring and

23   transportation of PLAINTIFF for purposed of sex induced by force, fraud, coercion, and solicitation.

24       178.    BURNSIDE, VALSH, and DOES 1 through 100 has financially and otherwise

25   benefited as a result of these acts and omissions. BURNSIDE, VALSH, and DOES 1 through 100

26   has benefited from facilitating BURNSIDE's behavior to the extent it brought BURNSIDE sexual

27   gratification and kept PLAINTIFF oppressed and compliant to BURNSIDE and his Company's

28   interests.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

179.   BURNSIDE, VALSH, and DOES 1 through 100 formed a venture as defined by 18 U.S.C. § 1591 given that they constituted a "group of two or more individuals associate in fact, whether or not a legal entity."

180.   As a direct and proximate result of BURNSIDE, VALSH, and DOES 1 through 100's unlawful conduct as alleged hereinabove, PLAINTIFF has suffered physical injury, severe emotional distress and anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm and other consequential damages.

181.   PLAINTIFF also seeks reasonable attorneys' fees as provided under 18 U.S.C. § 1595 (a).

## TWELFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (As to ALL DEFENDANTS)

182.   PLAINTIFF incorporates by reference, repeats, and re-alleges, all preceding and subsequent paragraphs as though fully set forth herein.

183.   DEFENDANTS engaged in negligent and careless conduct as alleged in this Complaint, to PLAINTIFF's detriment.

184.   DEFENDANTS knew or should have known, that such conduct would cause direct and immediate emotional harm to PLAINTIFF, and they so negligently ran the employment environment that did in fact cause PLAINTIFF such harm.

185.   DEFENDANTS knew or should have known that the sexual violence, discrimination, harassment, retaliation, and wrongful termination perpetrated by DEFENDANTS was likely to cause harm to PLAINTIFF. Each of these acts and certainly all of them together, resulted in PLAINTIFF suffering severe and extreme emotional distress.

186.   As a proximate and/or direct result of DEFENDANTS' conduct, PLAINTIFF suffered and will continue to suffer economic loss of disadvantage and emotional distress, including but not limited to fatigue, depression, a general decline in health, sustained and prolonged pain and suffering, anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. PLAINTIFF is accordingly entitled to exemplary, general and compensatory damages and

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

1   attorney's fees in amounts to be provide at trial.

2        187.   PLAINTIFF seeks an award of general damages, special damages, exemplary

3   damages, costs and damages in excess of the jurisdictional minimum of this Court.

4                  **THIRTEENTH CAUSE OF ACTION**

5                **Intentional Infliction of Emotional Distress**

6                   **(As to All DEFENDANTS)**

7        188.   PLAINTIFF incorporates by reference, repeat and re-allege, all preceding and

8   subsequent paragraphs.

9        189.   DEFENDANTS engaged in intentional and outrageous conduct as alleged in this

10   Complaint, to PLAINTIFF's detriment.

11        190.   DEFENDANTS knew or should have known that the conduct was unlawful and

12   condoned the illegal activity by permitting it to occur in the workplace. DEFENDANTS, and each

13   of them, knew that such conduct would cause direct and immediate emotional harm to PLAINTIFF,

14   and they did nothing to remedy the situation.

15        191.   DEFENDANTS, and each of them, subjected PLAINTIFF to discrimination, sexual

16   harassment, assault and battery, and retaliation. DEFENDANTS engaged in these unlawful actions

17   with the specific intent to deprive PLANTIFF of her peace of mind and with reckless disregard for

18   her well-being.

19        192.   DEFENDANTS knew or should have known that the discrimination, sexual

20   harassment, assault and battery, and retaliatory conduct perpetrated by DEFENDANTS, each of

21   them, was unlawful and designed to cause harm to PLAINTIFF. Each of these acts and certainly all

22   of them together, resulted in PLAINTIFF suffering severe and extreme emotional distress.

23        193.   As a result of DEFENDANTS' unlawful conduct, PLAINTIFF suffered and will

24   continue to suffer economic loss or disadvantage and emotional distress, including but not limited

25   to, fatigue, depression, a general decline in health, sustained and prolonged pain and suffering,

26   anxiety, embarrassment, humiliation, loss of self-esteem, and mental anguish. PLAINTIFF is

27   accordingly entitled to exemplary, general and compensatory damages and attorney's fees in

28   amounts to be proven at trial.

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

194.    PLAINTIFF seeks an award of general damages, special damages, exemplary damages, costs and damages in excess of the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF pray for judgment against DEFENDANTS, and each of them, as follows:

1.    For economic damages in excess of $5,000,000 according to proof;

2.    For compensatory damages and non-economic damages in excess of $10,000,000 according to proof;

3.    For liquidated damages allowed as a matter of law;

4.    For civil penalties allowed as a matter of law;

5.    For special damages according to proof;

6.    For punitive damages where allowed by law;

7.    For pre-judgment and post-judgment interest pursuant to California Civil Code § 3287 and/or California Civil Code § 3288 and/or any other provision of law providing for pre-judgment and post-judgment interest;

8.    For attorneys' fees where allowed by law;

9.    For costs of suit incurred herein; and

10.    For such other and further relief as this Court deems just and proper.

DATED: August 20, 2025                    **VALIANT LAW**

By: _____

RAYMOND BABAIAN
JOSEPH JEZIORKOWSKI
ROBERT SAFAR
Attorneys for PLAINTIFF JANE DOE

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ♦ FAX 909 677 2290

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFF hereby demands a jury trial in the above-entitled action.

DATED:  August 20, 2025                                    **VALIANT LAW**

By: _____

RAYMOND BABAIAN
JOSEPH JEZIORKOWSKI
ROBERT SAFAR
Attorneys for PLAINTIFF JANE DOE

VALIANT LAW
800 FERRARI LANE, SUITE 100
ONTARIO, CALIFORNIA 91764
TELEPHONE 909 677 2270 ◆ FAX 909 677 2290

# EXHIBIT A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 19, 2025

Raymond Babaian
800 Ferrari Ln., Suite 100
Ontario, CA 91764

RE:     **Notice to Complainant's Attorney**
CRD Matter Number: 202508-30818119
Right to Sue: Doe / Fox Corporation et al.

Dear Raymond Babaian:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 19, 2025

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202508-30818119
Right to Sue: Doe / Fox Corporation et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 19, 2025

Jane Doe

,

RE:  **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202508-30818119
Right to Sue: Doe / Fox Corporation et al.

Dear Jane Doe:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective August 19, 2025 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program.
Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave
(Government Code sections 12945.2, 12945.6, or 12945.7) has the right to
participate in CRD's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in CRD's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
CRD's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Jane Doe                                                    CRD No. 202508-30818119

                                    Complainant,

vs.

Fox Corporation
10301 W. Pico Blvd.
Los Angeles, CA 90064

Veantea Burnside

,

Valsh Executive Protection, LLC
555 Anton Boulevard, Suite 150
Costa Mesa, CA 92626

Fox Cable Network Services, LLC
10301 W. Pico Blvd.
Los Angeles, CA 90064

Constellis, LLC
13530 Dulles Technology Drive, Suite 500
Herndon, VA 20171

Triple Canopy, Inc.
13530 Dulles Technology Drive, Suite 500
Herndon, VA 20171

Christopher Ganny

,

Gregory Ochotorena

,

Dijon Williams

,

Anna Druker

-1-
*Complaint – CRD No. 202508-30818119*

Date Filed: August 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

,

Respondents

_____

**1.** Respondent **Fox Corporation** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Veantea Burnside** individual as Co-Respondent(s).
Complainant is naming **Valsh Executive Protection, LLC** business as Co-Respondent(s).
Complainant is naming **Fox Cable Network Services, LLC** business as Co-Respondent(s).
Complainant is naming **Constellis, LLC** business as Co-Respondent(s).
Complainant is naming **Triple Canopy, Inc.** business as Co-Respondent(s).
Complainant is naming **Christopher Ganny** individual as Co-Respondent(s).
Complainant is naming **Gregory Ochotorena** individual as Co-Respondent(s).
Complainant is naming **Dijon Williams** individual as Co-Respondent(s).
Complainant is naming **Anna Druker** individual as Co-Respondent(s).

**3**. Complainant **Jane Doe**, resides in the City of **,** State of **.**

**4**. Complainant alleges that on or about **September 21, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's color, sex/gender, gender identity or expression, sexual orientation, race (includes hairstyle and hair texture), sexual harassment.

**Complainant was discriminated against** because of complainant's color, sex/gender, gender identity or expression, sexual orientation, race (includes hairstyle and hair texture) and as a result of the discrimination was terminated, denied hire or promotion, reprimanded, denied equal pay, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was terminated, denied hire or promotion, reprimanded, denied equal pay, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, denied work opportunities or assignments.

Date Filed: August 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

**Additional Complaint Details:** In May 2021, COMPLAINANT joined FOX's security department as a Security Coordinator working closely with executives. She immediately observed an unprofessional and hostile workplace marked by vulgar language, sexually and racially inappropriate "humor," and pressure to consume alcohol. Much of this conduct was driven by Vice President of Global Security Operations, GANNY, and by BURNSIDE. COMPLAINANT, a Black woman who identifies as LGBTQ+, heard statements such as "slave-driver" and "cracking the whip," and was told "black girls don't last around here." She witnessed executives mock the names of Black waiters and call one "high cotton." A co-worker sat back-to-back with her and pulled her braids over his head while others laughed and took photos. COMPLAINANT objected each time. Against this backdrop, she began reporting to and shadowing BURNSIDE, who quickly asserted authority over her daily work. On May 14, 2021, COMPLAINANT traveled to Delaware for the Monster Mile NASCAR event under BURNSIDE's direction. From the outset, he coerced her into serving as his personal assistant and chauffeur, directing her to drive him and run unrelated personal errands. He positioned himself as the gatekeeper for her continued employment, reinforcing that his approval was necessary for her role. On May 15, after a day of training, he pressed her to drink alcohol at dinner. Although she had one drink, he repeatedly urged more consumption. He then had her drive to a liquor store, bought more alcohol, and led her to his hotel where he again pressured her to drink. Near 12:45 a.m. on May 16, when COMPLAINANT tried to leave, he told her to stay and referenced his authority to protect her from any reprimand.

Within minutes, BURNSIDE lunged at COMPLAINANT, began unbuttoning her pants, and ignored her verbal refusal. He overpowered her, pinned her down, and forcibly pulled down her pants. He digitally and orally penetrated her vagina while she thrashed and pleaded for him to stop. After he withdrew, she fled in shock. While driving back to her hotel, she crashed; her car overturned and sustained extensive damage. Dazed and injured, she forced the door open, retrieved her phone, and, with no other support in Delaware, called BURNSIDE. He claimed to be a former police officer and spoke with an officer at the scene, after which the field report recorded "no injuries" and no medical assistance was summoned. He then coerced her back to his hotel, despite her visible injuries, reports of severe pain, and belief she had a concussion and broken ribs. COMPLAINANT believes he falsely portrayed himself as a former officer to manage the police interaction, prevent her from going to the hospital, and reduce the chance of a report or collection of evidence. She remained at his hotel without medical care.

The next day, BURNSIDE instructed COMPLAINANT to act as if nothing had happened, threatened her employment if she disclosed anything, and continued to force her to drive him. He later called her work a "test run" and refused to pay her wages for those days. Weeks later, on July 7, 2021, he sent a male employee a photo of a half-naked woman and offered to arrange for the woman to be delivered to the employee's room, which reflected a broader "locker room" culture of objectification. COMPLAINANT believes he had a history of sexually violent behavior and that she was not his only victim. Following Delaware, he continued harassing COMPLAINANT with comments about her makeup and clothing, spread false rumors to isolate her, and threatened to reduce her hours, eliminate her position, or withhold wages. He constantly reminded her she "owed" him because he had hired her and kept assigning her personal-assistant tasks.

Date Filed: August 19, 2025

Despite this environment, COMPLAINANT's performance earned her a promotion in April 2022 to Security Operations Manager for USFL events. While preparing payroll for VALSH at BURNSIDE's direction, she discovered she was being paid on a day-rate while male counterparts were paid differently. She frequently worked 14 to 16-hour days, was on call at all times, and averaged well over 40 hours per week, yet received no added compensation. She was the only employee subject to the day-rate and earned about seven dollars less per hour than male peers, excluding overtime and on-call burdens. She tried to correct her hours in VALSH to reflect actual time worked. In response, BURNSIDE threatened termination if she did not falsify her entries. When Director of Operations for CONSTELLIS/TRIPLE CANOPY, KLUZINSKI, noticed the retroactive adjustments, COMPLAINANT explained the pay errors and the threats. No remedial steps followed, and she remained underpaid.

In May 2022 in Alabama, BURNSIDE again assaulted COMPLAINANT. He told her he needed to retrieve something from a hotel room and emphasized it was not his room, knowing she would not agree to go to his actual room. In what he called a "spare" room, he shoved her onto a bed, pinned her down, and digitally and orally penetrated her vagina. COMPLAINANT believes he reserved that spare room for the purpose of assaulting her. Afterward, he continued the pattern of harassment and retaliation. In September 2022, when COMPLAINANT tried to take a scheduled vacation, he threatened to withhold wages, terminate her, and "out" her as LGBTQ+ if she took time off. That threat was particularly coercive because he knew discrimination from leadership would follow.

In early 2023, COMPLAINANT and a white male colleague, LITTLESTONE, were considered for Director of USFL Security. COMPLAINANT already performed many duties of the role and had received consistent praise from FOX security leadership and USFL executives, while LITTLESTONE lacked relevant experience and had performance issues. Director of Special Events, RASMUSSEN, repeatedly told GANNY that COMPLAINANT was the only appropriate choice and reported that USFL executives themselves had requested her for the role. Despite these endorsements, COMPLAINANT was denied the position. She believes the decision was based on discriminatory animus rather than merit.

On February 19, 2023, COMPLAINANT reported BURNSIDE's assaults to RASMUSSEN and asked to remain anonymous because of the culture of retaliation. RASMUSSEN immediately tried to escalate the disclosure to GANNY. FOX executives and HR agents did not show concern or belief. Instead, FOX began intimidating COMPLAINANT and RASMUSSEN. Although informed of serious allegations, GANNY failed to act promptly and said FOX would not proceed unless the victim came forward. He ended a call by saying he was at dinner. A few days later, RASMUSSEN sent a written report to OCHOTORENA and GANNY, carefully avoiding identifying details. On February 23, HR leaders DRUKER and WILLIAMS met with RASMUSSEN. Rather than gathering facts, they pressed him to identify the victim and threatened termination for "non-compliance" when he refused. He continued to protect COMPLAINANT's identity.

FOX then pivoted and began cold-calling women who had worked with BURNSIDE to find the whistleblower. On March 10, 2023, DRUKER and WILLIAMS reached COMPLAINANT, misrepresented themselves as "FOX legal," and pressed her to disclose. Feeling she had no choice, she identified herself and described the Delaware assault and car crash. They showed little interest in details. Although COMPLAINANT warned HR about prior retaliation and asked for confidentiality, DRUKER and WILLIAMS disclosed her identity to BURNSIDE

-4-
*Complaint – CRD No. 202508-30818119*

Date Filed: August 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

and the executive team. On March 27, they informed COMPLAINANT that FOX had deemed the incident "consensual," relying on BURNSIDE's claim that she had voluntarily undressed and initiated contact. COMPLAINANT disputed this, but FOX maintained the "consensual" finding without meaningful investigation.

In a subsequent meeting, HR treated the matter casually and announced a plan to "resolve" it quickly because they had a planned two-week vacation. They declared the investigation inconclusive and stated that what COMPLAINANT and BURNSIDE did in their personal lives was not FOX's business, again framing the rape as consensual. The investigation ended with no discipline for BURNSIDE and no safety measures for COMPLAINANT. COMPLAINANT experienced the process as coercive identification, disclosure to her assailant, gaslighting, and forced continued contact. Soon after, BURNSIDE was terminated for unrelated fraudulent activity, but the retaliation against COMPLAINANT intensified. When announcing BURNSIDE's departure, GANNY framed it as voluntary and praised him as moving on to "bigger and better things," despite knowing COMPLAINANT's allegations. He began aggressively berating her. Together with OCHOTORENA, he excluded her from critical team meetings by canceling her invite links, even though these meetings were essential to her duties. He unfairly blamed her for issues outside her responsibility. In May 2023, she was removed from the game agenda email list, which obstructed her work. FOX and several executives continued to sideline her for weeks.

In July 2023, FOX terminated RASMUSSEN, the manager who had tried to protect COMPLAINANT's identity and escalate her concerns, which foreshadowed COMPLAINANT's own fate. During a trip to Australia around that time, the department was understaffed due to recent terminations, yet GANNY assigned COMPLAINANT to menial tasks unrelated to her role, such as acting as a concierge, and blocked colleagues who requested her assistance. This reassignment served no operational need and reinforced the pattern of retaliation.

By August 2023, FOX formally demoted COMPLAINANT back to Security Coordinator. Soon after, FOX deactivated her email, signaling termination. On September 21, 2023, FOX ended her employment by refusing to renew her contract. FOX claimed it no longer contracted "full month agents," a category COMPLAINANT had never heard applied to her status. Despite that rationale, FOX continued contracting CONSTELLIS/TRIPLE CANOPY personnel and had COMPLAINANT train other CONSTELLIS/TRIPLE CANOPY employees who were placed into FOX roles, which undermined FOX's stated reason for ending her employment.

In sum, COMPLAINANT alleges that after she entered a department rife with racial and sexual hostility, her immediate supervisor twice sexually assaulted her, and leadership tolerated and reinforced the misconduct. When she reported the assaults through a manager, FOX's HR targeted the whistleblower instead of the perpetrator, forced her identification, disclosed it to the assailant, and concluded without adequate investigation that the assault was "consensual." Meanwhile, COMPLAINANT faced persistent harassment, pay inequities, threats to her employment and wages, and exploitation of her LGBTQ+ status through outing threats. After she was passed over for a promotion despite strong endorsements and performance, FOX escalated retaliation by excluding her from meetings and communications, assigning menial tasks despite operational need, demoting her, and ultimately terminating her while continuing to contract others and replacing her.

*Complaint – CRD No. 202508-30818119*

Date Filed: August 19, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Raymond Babaian**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On August 19, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Ontario, CA**

-6-
*Complaint – CRD No. 202508-30818119*

Date Filed: August 19, 2025

CRD-ENF 80 RS (Revised 2025/02)